UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JASBIR MOONACH, BHAVANEDEEP S. MOONACH, PUNEET S. MOONACH, a Minor, By and Through His Guardian Ad Litem, MICHAEL D. McCLELLAND

        Plaintiffs,

    v.

UNITRIN AUTO AND HOME INSURANCE COMPANY AND DOES 1-100,

        Defendants.

NO. CIV. S-06-1520 FCD/DAD

MEMORANDUM AND ORDER

----oo0oo----

This matter comes before the court on plaintiffs' motion to strike defendant Unitrin Auto and Home Insurance Company's ("defendant") first amended answer to the complaint and counterclaim for restitution and to enter default against defendant.[1]  By the motion, plaintiffs argue that defendant does

---

[1] Plaintiffs styled their motion a motion to "strike," however, they did not cite any Federal Rule of Civil Procedure
(continued...)

not have standing to sue or be sued in the State of California as defendant was suspended from doing business in California, in February 2004, for failure to pay taxes. For the following reasons, plaintiffs' motion is DENIED.[2]

**BACKGROUND**

On July 25, 2005, Ajitpal Singh Moonach and plaintiff Bhavandeep Moonach were involved in a motor vehicle accident with Alfonso Gonzalez ("Gonzalez"). (Pl's Compl., filed July 7, 2006, at ¶ 13.) Ajitpal Singh Moonach ("Decedent") died as a result of the accident. (Id. at ¶ 16.) Bhavandeep Moonach was injured and incurred medical bills. (Id. at ¶ 17.) The traffic collision report indicated that Gonzalez was uninsured. (Id. at ¶ 14.)

Approximately two years before the accident, on or about August 21, 2003, Decedent purchased motor vehicle insurance from defendant. (Id. at ¶ 11.) The policy included uninsured motorist coverage. (Id.) The policy was renewed annually and was in force and effect at the time of the accident. (Id. at ¶¶ 11-12.) Between July 25, 2005 and April 2006, defendant paid plaintiffs approximately $325,000 pursuant to plaintiffs' uninsured motorist claim. (Id. at ¶ 18.)

---

[1](...continued) under which they bring the motion. Motions to strike are normally considered under Federal Rule of Civil Procedure 12(e); however, here, plaintiffs' motion essentially seeks dismissal for lack of jurisdiction and thus is properly considered under Federal Rule of Civil Procedure 12(b)(1).

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1     On or about January 23, 2006, plaintiffs brought suit in
2 state court against Gonzalez and his employer, Stucco, for the
3 death of Decedent, and for the injuries sustained by Bhavandeep
4 Moonach arising from the motor vehicle accident.  (Id. at ¶ 19.)
5 Stucco responded to interrogatories and indicated that Gonzalez
6 would be defended by its insurance carrier under a reservation of
7 rights.  (Id. at ¶ 20.)
8     Plaintiffs claim that their total damages as a result of the
9 motor vehicle accident are in excess of $1,000,000.  (Id. at ¶
10 26.)  Gonzalez does not have any assets, nor insurance, from
11 which to satisfy the damages claimed by plaintiffs.  (Id. at ¶
12 11.)  In addition, Stucco is a small business owned by a husband
13 and wife.  (Id. at ¶ 25.)  Stucco has a $1,000,000 insurance
14 policy for motor vehicle accidents.  (Id.)
15     On or about May 15, 2006, Stucco and Gonzalez offered to
16 resolve the claims arising from the motor vehicle accident by
17 payment of Stucco's insurance policy limit of $1,000,000.  (Id.
18 at ¶ 27.)  Plaintiffs found this settlement offer to be
19 reasonable given the improbability of collecting an excess
20 judgment from either Stucco or Gonzalez, the expense of
21 protracted litigation, and the emotional turmoil of having to
22 relive the events of the accident.  (Id. at ¶ 28.)
23     On or about April 2006, defendant made a demand for payment
24 of approximately $325,000 from Gonzalez--the same amount
25 defendant paid to plaintiffs for their uninsured motorist claim.
26 (Id. at ¶ 29.)  On or about May 15, 2006, plaintiffs requested
27 defendant waive its subrogation rights, as there was not enough
28 money to make plaintiffs whole.  (Id. at ¶ 30.)  Plaintiffs have

thereafter consistently made this request to defendant. (Id. at ¶ 31.)  Plaintiffs claim that defendant has refused to negotiate its subrogation claim in good faith. (Id. at ¶ 32.)

In the instant action, plaintiffs state three causes of action against defendant: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing and violation of fiduciary duties; and, (3) declaratory relief. (Id. at ¶¶ 34-58.)  Defendant answered the complaint, and subsequently filed an amended answer and counterclaim for restitution. Defendant's counterclaim for restitution alleges that the uninsured motorist claim paid to plaintiffs should be reimbursed since Gonzalez was not an uninsured motorist. (Def's Am. Ans. & Compl., filed July 25, 2006, at 11:25-12:5.)  Plaintiffs now move to strike defendant's first amended answer and counterclaim, arguing that jurisdiction does not exist and default should be entered, as defendant is unable to either sue or be sued in the State of California based on its forfeited corporate status.

Specifically, plaintiffs claim that defendant was suspended from conducting business operations in the State of California on February 2, 2004, for failure to meet franchise tax obligations of the California Revenue and Taxation Code ("Tax Code").  After learning of the alleged forfeiture pursuant to the motion, defendant initiated an investigation and determined that it had been in compliance with California law at all relevant times, but the Franchise Tax Board made a mistake and erroneously listed defendant as a "general" corporation rather than an insurance company. (Opp'n, filed Aug. 17, 2006, at 1:6-9.)  A Franchise Tax Board representative indicated that the problem was related

4

to defendant's name change in 2003.  (Langley Dec., filed Aug. 17, 2006, at ¶ 5.)

At the request of the Franchise Tax Board representative, defendant sent certain documentation to the Board, including a Department of Insurance Certificate of Authority issued to defendant under its previous name, General Security Insurance Company, the Secretary of State name change certificate, and defendant's current Department of Insurance Certificate of Authority.  (Topp Dec., filed Aug. 17, 2006, at ¶ 3.)  Given this evidence that defendant was properly registered with the Department of Insurance as an insurance corporation, the auditors at the Franchise Tax Board agreed to notify the Secretary of State that defendant's corporate status should be "restored," denoting that defendant had remained at all times in good standing.  (Id. at ¶ 5.)

The Franchise Tax Board representative informed defendant that a "certificate of revivor" would not be issued.[3]  On August 15, 2006, the Franchise Tax Board sent defendant an Entity Status letter affirming that defendant's standing had been "restored."  (Id. at ¶¶ 6-7.)  On August 16, 2006, defendant received a Certificate of Status from the California Secretary of State, certifying that defendant was in good standing.  (Id. at ¶ 8.)[4]

---

[3]   A certificate of revivor implies that corporate status has been "revived" after a delinquent obligation has been cured.

[4]   Plaintiffs did not file a reply, contesting any of the above facts.

5

**STANDARD**

Under the Federal Rule of Civil Procedure 12(b)(1), a party may by motion raise the defense that the court lacks "jurisdiction over the subject matter of a claim." It is well established that the party seeking to invoke the jurisdiction of the federal court bears the burden of establishing the court's subject matter jurisdiction. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

On a motion to dismiss pursuant to Rule 12(b)(1), the standard the court is to apply varies according to the nature of the jurisdictional challenge. A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of jurisdiction contained in the complaint as insufficient on their face to demonstrate the existence of jurisdiction ("facial attack"), or may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact ("factual attack"). Thornhill Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). If the motion constitutes a facial attack, the court must consider the factual allegations of the complaint to be true. Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981); Mortensen, 549 F.2d at 891. If the motion constitutes a factual attack, as we have here, "no presumptive truthfulness attaches to plaintiffs' allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill, 594 F.2d at 733 (quoting Mortensen, 549 F.2d at 891).

**ANALYSIS**

At issue here is defendant's corporate status as defined by the Tax Code and whether defendant upheld its tax obligations pursuant to the Tax Code. As set forth above, the defendant's corporate status was mis-classified by the Franchise Tax Board, and defendant has met its tax obligations under its corrected classification. Plaintiffs' argument that defendant is unable to either sue or be sued in the State of California under § 23301.5 of the Tax Code is therefore unavailing.

Section 23301.5 states:

> Except for the purposes of filing an application for exempt status or amending the articles of incorporation as necessary either to perfect that application or to set forth a new name, the corporate powers, rights, and privileges of a domestic taxpayer may be suspended and the exercise of the corporate powers, rights, and privileges of a foreign taxpayer in this state may be forfeited, <u>if a taxpayer fails to file a tax return required by this part</u>. (emphasis added.)

The forfeiture under § 23301.5 brings with it the inability to either sue or be sued within the State of California. <u>Boyle v. Lakeview Creamery</u>, 9 Cal.2d 16 (1937); <u>Reed v. Norman</u>, 48 Cal.2d 338 (1940).

Defendant was not required to pay franchise taxes under § 23301.5. Rather, as a foreign insurance corporation, defendant was obligated to pay a premium tax, as stated in § 12201 of the Tax Code. Section 12201 states: "Every insurer doing business in this State shall annually pay to the State a tax on the bases, at the rates, and subject to the deductions from the tax hereinafter specified." The premium tax imposed by § 12201 is in lieu of franchise tax pursuant to § 12204 of the Tax Code, where "[t]he

7

tax imposed on insurers by this chapter is in lieu of all other taxes and licenses, state, county, and municipal, upon such insurers and their property." Defendant has paid the subject premium tax at all relevant times. (Opp'n, at 3:23-24.)

However, in determining whether defendant forfeited its right to litigate in the pending action, a distinction must be drawn between a corporation that has been "revived" and one that has been "restored." The suspension of corporate powers, rights, and privileges means that a suspended corporation cannot sue or be sued while its taxes remain unpaid. <u>Gar-Lo, Inc. v. Prudential Sav. & Loan Assn.</u>, 41 Cal.App.3d 242, 244 (Cal. Ct. App. 1974). A suspended corporation may continue litigation against it upon paying the unpaid taxes and obtaining a "certificate of revivor." <u>Id</u>. The corporation's "revived" status allows it to retroactively validate actions taken in pending litigation. <u>Id</u>. The issuance of a certificate of revivor implies that the corporation cured a default in the payment of franchise tax.

In this case, defendant's corporate status has been "restored," not "revived," because defendant was never in default of any tax obligations to the Franchise Tax Board pursuant to § 23305c(c) of the Tax Code. Section 23305c(c) states:

> If the Franchise Tax Board determines that a suspension or forfeiture was in error by the Franchise Tax Board, the Franchise Tax Board shall, in connection with the revivor, indicate that the taxpayer is "restored." <u>The status of the restored taxpayer shall be retroactive to the date of suspension or forfeiture as if there had been no suspension or forfeiture</u>. (emphasis added.)

Thus, defendant has not forfeited its rights to sue or be sued in

8

California because by statute, defendant must be treated "as if there had been no suspension or forfeiture." (Opp'n, at 5:1-2.) Since defendant's corporate status was not suspended or forfeited, defendant had, at all relevant times, the full rights, powers, and privileges of a corporation authorized to do the following: transact business under California law, including the right to enter into an insurance contract with Decedent; to defend the "bad faith" action filed by plaintiffs; and, to assert a counterclaim seeking reimbursement of uninsured motorist benefits paid to plaintiffs.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion to strike defendant's first amended answer to the complaint and counterclaim for restitution and to enter default against defendant is DENIED. Defendant has established that its corporate status has been restored to good standing, such that it has had all powers, rights, and privileges of a corporation under California law at all relevant times.

IT IS SO ORDERED.

DATED: September 6, 2006.

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE